All right, Mr. Gillum. Sir, may it please the court, my name is Lucian Gillum. I represent Lott Johnson in an appeal of a judgment on the pleadings order dismissing his case for race discrimination. And there are four issues that need to be discussed today. The first is the grounds on which the district court dismissed the case, which was preemption under Section 301 of the Labor Advantage Preparations Act. Second, fireman preemption. Third, whether or not the plaintiff stated the claim. And fourth, whether or not collateral estoppel bars the claim can be brought at all. Going to the first issue, Section 301. Regulation of employment matters is something that is part of normal police powers of the state. Courts have held it not for preemption in light in traditional police power areas of the state. Basically, it requires clear and manifest intent on the part of Congress to do so. Section 301 grants subject matter jurisdiction. Mr. Gillum, let me interrupt you. Would you mind standing closer? Maybe pull the microphone over up here. Yes, sir. Sorry. Section 301. Is that better? That's better. Thank you, sir. That's good. Section 301 of the Labor Management Relations Act basically gives federal courts jurisdiction for suits regarding violation of contracts between employers and labor organizations. So if your suit alleges a violation of a labor contract, then you're going to be preempted. However, it would be inconsistent with the intent to interpret this overly broadly. So where you have factual questions that run parallel, like you have a state law claim that's based in state law, not in the CBA, and the factual issues run parallel with the same kinds of facts that would be relevant to just a plain old breach of contract action, that does not permit preemption of the state law action. Counsel, I think the real question is whether they're inextricably intertwined. So could you address why would you not have to rely on interpreting certain provisions of the collective bargaining agreement in order to prove Mr. Johnson's claims? Well, it's a pretty fine distinction, I would say. First thing I would say is that this is a case involving a termination under a just cause provision of the contract. Now, the Eighth Circuit, Fifth Circuit, the Tenth Circuit, and the Supreme Court in L'Engle have all found that it was not inextricably intertwined where you had terminations under just cause provisions. I think the reason… Well, weren't those retaliation cases? At least some of them were, yes. And you've dismissed your retaliation claim here? Yes, I've dismissed the retaliation claim. But going back to the issue here, well, two issues kind of combined. I think the reason that they're not inextricably intertwined is that the issue in an employment discrimination case or a retaliation case is intent, generally. You're having to prove intent. So basically, the rule is that an employer's conduct and motivations are not – they're factual issues and they don't require interpretation of the CPA. And there's a doctrine called the good faith, honest belief doctrine, which kind of, I think, really addresses this issue. And it's normally something that trips up a plaintiff in these employment discrimination cases because the issue in discrimination cases is not necessarily did the plaintiff actually violate the rule that he's accused of violating. And it's not even what the rule really means. It's what the employer's perception or belief about that rule means. Well, counsel… Yes, sir. Do you think McDonnell Douglas would apply to your discrimination case here? McDonnell Douglas? Yes. I mean, that's one way you can prove a discrimination case, certainly. Well, I mean, one of the prongs there is the employer's legitimate expectations of the employee. How do you do that analysis without looking at the collective bargaining agreement here? Well, the first thing is that the only way in which the district court found that my client was not meeting the employer's legitimate expectations was in reference to the legitimate non-discriminatory reason off of the termination. Now, pursuant to Davenport v. Riverview Garden School District, you can't do that. You're conflating the prima facie case with the pretext element of a McDonnell, portion of a McDonnell Douglas case. When you look at the qualification element in the prima facie case of McDonnell Douglas, what you look at is whether or not the employer's meeting, the employee's meeting normal expectations without reference to that legitimate non-discriminatory reason. And for that, you look in the body of the complaint. That's where you have to get those facts from. And basically, my client was employed successfully with them for years until he was finally terminated. And the only grounds that's being discussed by anybody on either side of this case for the termination is this issue of free-falling freight, which constituted extremely serious misconduct and violated the just cause provision. So the reason you don't have to interpret it is that you don't get to that issue. And once again, in just cause cases, intent is still the issue, whether it's discrimination or retaliation. And they have stated that issues of employer's intent and the actions of an employer are fact issues, not issues of interpreting CBAs. And once again, my client can win this case even if he undisputably committed the act of which he's accused. They're going to have an argument that he can't really dispute that anymore because of the arbitration. So the issue is, did they fire him because they found that he violated just cause provisions, which he can't really dispute anymore after that arbitration, or did they fire him because of racist discrimination? Under McDonnell-Douglas v. Green and McDonnell v. Santa Fe Transportation Company, those are cases where the plaintiff indisputably, indisputably committed the acts of which they were accused. They both, one was stole from the company, the others engaged in an illegal sit-in. They could still bring discrimination claims. So you don't have to interpret the CBA because effectively that arbitration finding is going to mean that he can't really dispute that he violated the just cause extreme seriousness provisions of the CBA. So are you saying that you can prevail by going through the McDonnell-Douglas framework to the final step and look at comparators? Yes, sir. Is that what you're talking about? Yes, sir. We can do that. I mean, there's other ways to prove a discrimination case. Well, but there's no direct evidence here. Not right now. I mean, we do discovery and we may find something. So if you go through the McDonnell-Douglas burden-shifting framework and you get to that final step where you're looking at comparators, how did the company treat comparators in the same situation more favorably than they've done with Mr. Johnson? Now at that step, aren't you going to have to make reference? Isn't reference to the collective bargaining agreement required? Because you're going to have to decide whether comparators have committed these serious, under the contract, these, I can't remember the terminology, but the particularly serious or extremely serious or whatever under the contract. So don't you, one way or another, don't you end up making reference to the CBA? I think, once again, we get back to the rather fine distinction, but it's still a distinction that the courts have been making under these just cause provisions, allowing discrimination cases to go forward and retaliation cases to go forward, which is that the issue is not did the employee actually violate terms of the CBA. The issue is what they believed the employee did, what they believed was a violation of the serious thing. And so what we can do is, for instance, look at people that they have terminated for conduct that they describe in their own words as extremely serious and then see if there are other people who are Caucasian who didn't get terminated for that same type of misconduct. And it doesn't require a look at the CBA. It requires a look at the facts of what they've done to other individuals. It requires a look at the CBA because you're bringing in this term extremely serious misconduct. Well, that's a term under the contract. But it's a peripheral reference to it. It's a peripheral tangential involvement of it, which is what the Supreme Courts in Norris and L'Engle have said is not enough to justify preemption because what you're really looking at is not what that CBA actually means. You're not asking a court, state court or a federal court to say this is what the CBA means. What you're asking the court to do is find whether or not Caucasian employees have been treated differently and better than black employees. That's what you're asking them to do. And what you're looking at is not what the terms of the CBA means but what they've actually done. Now, what I'd like to do is reserve the rest of my time. Thank you very much. Mr. Larkin. Thank you. Good morning. May it please the court, I'm Curt Larkin, and I represent the appellee, UPS Ground Freight. The district court correctly found that this case is controlled by Bolt, the court's recent decision in Bolt, that Mr. Johnson's state law claims were preempted by Section 301 of the LMRA. The reason Bolt controls this case is because resolution of his claims, including his prima facie case under McDonnell Douglas, is substantially dependent on the CBA. And analysis of any defenses that the company may have is actually unnecessary to disposition of this case because CBA analysis is required in myriad places before we even get there. And that's what I'd like to focus my time on today. I think there are three points I'd make in rebuttal to Mr. Gillum. Number one, the fundamental factual allegation in this case is that Mr. Johnson claims his actions, his actions in dumping this freight, free-falling this freight as he terms it, off the back of a trailer and leaving it damaged on the ground, which, of course, is what he was fired for, that those actions were in accordance with company policy at all times. Those are his allegations in the complaint. We can't evaluate the merit of his discrimination claim without deciding whether he's right or wrong about that. And there's no way to do that without substantially interpreting this collective bargaining agreement. And as we pointed out in our brief, myriad provisions in the CBA inform that assertion in his complaint. Well, but let's just concede that it was wrong. It was misconduct. The serious, this term serious, serious misconduct or whatever the term is. Offense of extreme seriousness. Yeah, let's just assume it is. If he's treated differently than similarly situated employees who are guilty of the same or similar misconduct, he can still, can he still go forward? No, Your Honor, for a few reasons. Number one, he's not admitting that what he did was misconduct. The entire allegation that the central rust of his case is that he did not engage in misconduct, that he was authorized to dump this freight over the back of the trailer. And the only way to answer that question, was he authorized, was he not authorized, is to look to the collective bargaining agreement. That's the only place we're going to find the answer. And we explain this in detail, but I'll just cite a few provisions this morning. Article 9 of the CBA says that bargaining unit members are not liable for loss or damage, which happened here, unless they act without justification or mitigation and violate established rules, procedures, or policies. That's what we say he did. But there are other examples in the CBA that could be mitigation. For example, Article 15, Section 1. He claimed that his liftgate on the back of his truck was broken. The company is obligated to provide him with a vehicle that is in a, quote, safe operating condition. If his broken liftgate violates that provision, he might have a mitigating circumstance. Now, is it? I don't know. He didn't allege that he had trouble making other deliveries that day. But that provision in the contract speaks to his liftgate. Another one also, Section 2 of Article 15 says that he can't be required to, quote, engage in any activity involving dangerous conditions of work. So the question there would be, how is he supposed to get the freight from the top of an allegedly broken liftgate down to the ground if the liftgate didn't work? Dumping it off was one way. That's what he did. Are there others? Was it too heavy to carry down? Could maybe he have broken down the pallets and hand-carried them down? The point is not to try to answer any of these questions, right? The point is that merely asking them plainly shows that sorting through his claim can't be done without in-depth, substantial CBA analysis. And that's before we even get to the fact that the company looked at all this and decided that there was no mitigating circumstances, that he had engaged in what Article 6 of the contract calls an offense of extreme seriousness. That's a lot more than saying we had just cause to discharge him. The offense of extreme seriousness is a term unique to this party's collective bargaining agreement. Counsel, how would you address the just cause cases that Mr. Gillum referenced? Well, I would address it in several ways. First, this is not simply a just cause case. We have demonstrated that CBA analysis is required at all steps of the analysis. And I would say that this discussion we're having now, I haven't even gotten to his prima facie case yet. We're just talking about the central factual allegation in his complaint. He was authorized to do what he did. We can't even decide whether that's right or wrong without looking to the CBA. The next step, which was my second point today, would be to say that as in Bolt, we can't evaluate the elements of his prima facie case under McDonnell Douglas without construing the CBA. And as we showed in our brief, at least with respect to the race case, there are at least two elements in his prima facie case that would require CBA analysis. One is that he's qualified for his position. And I would say in response to what Mr. Gillum said this morning, we're not collapsing elements in McDonnell Douglas. We're doing exactly what the court did in Bolt. And there is evidence, I think everyone can agree, that there can be evidence in a case that's relevant to more than one step in the analysis. And so our position is that he can't possibly be meeting the company's legitimate expectations if he intentionally damages customer product. As we've just been discussing, the only way to decide whether what he did was or was not appropriate or not was by reference to the CBA. And if it's not, there's no way he can meet the company's legitimate expectations. That's the analysis the court performed in Bolt when it was deciding whether the plaintiff there was fit for duty under that employer's rules. It's also the analysis that was performed by the district court in the Edwards case, which we cited in our 28J letter. So Mr. Johnson can't make out the second element in his prima facie case without reference to the CBA. He also can't make out the last one, which is that there's an inference of discrimination. Again, we're here on a McDonnell-Douglas analysis. Many of the cases cited in Mr. Johnson's brief are direct evidence cases. And if you have direct evidence of discriminatory motive, you may not have to look at the CBA. But here he doesn't. Here we're proceeding under the circumstantial framework of McDonnell-Douglas. And that's a completely different case, I would submit, as the court recognized in Bolt. And so if we get to the inference of discrimination element, Mr. Johnson claims that an unnamed white driver engaged in misconduct at the same store. He claims that the driver told the company that the store was closed when it wasn't, and this resulted in the store being billed fraudulently. And this was worse misconduct in Mr. Johnson's mind, and this individual wasn't disciplined. Well, there's no way to determine whether this individual is similarly situated under McDonnell-Douglas without CBA analysis. First of all, he doesn't say whether they're even in the same driver classification. There's all kinds of drivers, feeder drivers, package drivers, combination drivers. All these positions are established by the CBA. We'd have to look there just to determine if they even work in the same job. But then whether the white driver's actions constitute, on his part, an offense of extreme seriousness is a question we can't answer without looking at the CBA. And if his actions didn't constitute an offense of extreme seriousness, how can he be a valid comparator? And then we can go even one level deeper than that, because even if his actions did, Article 6 of the contract requires that the company issue discipline within 10 days of learning about the alleged offense. So if the company didn't find out about what this white driver did until 11 days after he did it, it may not have been contractually justified in disciplining him. And then the disparate treatment, the allegedly disparate treatment, wouldn't be for a discriminatory reason. Again, this entire discussion is founded on the idea that we can't even answer any of these questions without significant CBA analysis. And that's the main distinction between this case and the Just Cause cases. But I would make one other point on the 301 analysis, and that is that the notion of whether Mr. Johnson committed an offense of extreme seriousness and having to engage in that analysis, it's not a defense, a defense in the way that Lingle and Meyer and Humphrey in those cases analyzed for several reasons. Number one, as we've already discussed, whether Mr. Johnson committed an offense of extreme seriousness or not is relevant to several elements of this prima facie case. So right there, we're not discussing this concept in the context of a defense. But secondly, the analysis is also relevant at step two of the McDonnell-Douglas framework for these claims. And I would suggest to the Court that the McDonnell-Douglas framework is not a defense. It is an evidentiary construct used in discrimination cases where there is no direct evidence of discrimination. And I would note that while the employer at the second step of McDonnell-Douglas bears the burden of production, the burden of persuasion in McDonnell-Douglas rests at all times with the plaintiff. The case isn't over at the second step of the McDonnell-Douglas analysis. So if the employer's legitimate nondiscriminatory reason for taking the adverse action is that he committed an offense of extreme seriousness, that's not a defense to liability. And that makes this analysis very different from the cases where the employer, all they had to argue in favor of preemption was, well, we had just cause under the contract, and therefore preemption lies. This case overflows with additional reasons why you can't decide it without consulting the collective bargaining agreement. I'd make a few other points with my remaining time. And as Mr. Gillum noted, there were several alternative grounds for dismissal that we noted in our papers that the district court didn't decide. And I would simply note that even if the court were to determine that the case is not preempted by Section 301, those grounds are valid grounds to dismiss the case. I'd note that the nondiverse plaintiff, Ms. Humphreys, her case was remanded back to state court. They settled that, the part of the case against Ms. Humphreys. And so there's now complete diversity of the parties. So even if the case isn't preempted by Section 301, it's going to stay in federal court. And so the court can address these additional defenses. First and foremost, Garmin preemption. Like Section 301, Garmin's intended to achieve uniformity in the administration of labor-management relations. And so under the Garmin doctrine, when activity is arguably subject, not definitely subject, arguably subject, to Section 7 or Section 8 of the National Labor Relations Act, the courts have to defer to the exclusive competence of the NLRB. And on this point, I think this court's decision in Platt v. Jack Cooper is outcome determinative. There the court recognized that an invocation of a right protected under a collective bargaining agreement constitutes protected activity under Section 7 of the National Labor Relations Act. That's the exact same thing we're dealing with here. Mr. Johnson filed numerous grievances over the course of the two years preceding his discharge, 57 to be exact. That's 3.4 a week if we're keeping score. No, 3.4 a month, I'm sorry. But he alleged numerous things in those grievances, including the right to be free from race discrimination. Now, filing those grievances is indisputably Section 7 activity. And so he can't have it both ways. He can't say to the NLRB, I was retaliated against for my union activity, and then turn around and say to this court, well, I was retaliated against and discharged because of race discrimination, when it's clear the complaints he's referring to are one and the same. There is grievances. His termination grievance, he said he was terminated, quote, in violation of Article 28, age and race. UPS Freight, quote, engaged in ongoing disparate treatment of its African-American employees, and he was subjected to, quote, retaliation for past grievances and labor charges. Those allegations are indistinguishable from the allegations in his lawsuit. His complaint allegation says he was terminated because he was, quote, black and opposed racial discrimination, and, quote, participated in a protected activity. Then he goes to the NLRB and says he was terminated, quote, in retaliation for his union and protected concerted activities. His protected activities were his grievances in which he alleged race discrimination. They're one and the same, so he can't have it both ways. And the court in Platt, I think, noted that the plaintiff there had filed ULP charges and CBA grievances to contest his discharge, and this court noted that, and I'll quote, it's highly relevant that Platt unsuccessfully sought relief through the grievance process and directly from the NLRB before bringing this lawsuit. That's exactly what we have here. Mr. Johnson filed grievances to contest his termination. He lost. He went to the NLRB and filed the same claim. He lost. Now he's here asking the court to give him one more chance. For all the reasons that we discussed this morning and in our briefing papers, we don't think he's demonstrated that he can get that chance. We think the case is preempted and the court should affirm the district court. There's no other questions. Thank the court for your time today. Thank you, Mr. Larkin. All right. Government preemption deals with sections 107 and 108 of the Labor Management Relations Act. It involves situations where people are being, it protects things like engaging in concerted activities, making labor complaints, joining a union, refusing to join a union, refusing to engage in concerted activities. What we've got left here is a race discrimination claim, not a retaliation claim. There would be perhaps a legitimate argument to be raised if we were dealing with a retaliation claim, but this is a race claim. It doesn't depend on the complaints at all. You know, if you look at the Platt case that they're citing, you know, it talks about alleging that he was discharged from making safety complaints. Are such safety complaints nonetheless protected for activity for government preemption purposes? On the facts of this case, it would seem so. The race discrimination case is in no way dependent on my client's previous complaints because it is a race discrimination claim, not a retaliation claim. Now, saying that my client had both ways is, I think, just wrong. First of all, Rule 8 allows you to plead alternative theories. Second of all, discrimination cases clearly recognize that you can have a case where there are multiple motivations for the discriminatory acts so that you can have a legitimate purpose still illegal if race was a substantial or motivating factor. In fact, in the race discrimination claim, you don't even have to prove it's a determining or but-for factor. You just have to prove that it's a motivating substantial factor. Then they have to prove not a determining factor. So my client can have it both ways, to be honest. Now, going to the issue of Bolt, one thing about that is that was an ADA case. The qualification element of an ADA case is substantially different than the qualification element from a race discrimination case. In race discrimination cases, you're looking at whether or not the individual is meeting the employer's legitimate expectations prior to the conduct for which they're being fired, legitimate, non-legitimate reason. In an ADA case, you have to look at whether or not the employee can perform the job functions with or without reasonable accommodations. So what you're looking at is job functions and the essential job functions that get listed by the employer and things like that. So I think the analysis in Bolt is different than the analysis in other cases involving just cause. Because it's an ADA case, because there's a fundamental difference on the qualification of an ADA claim. Because, for instance, if you have direct evidence, you don't even have to prove qualification. That's not an element of a race discrimination case where you have direct evidence. It's always an element of an ADA case, whether it's direct evidence or not direct evidence. And I see that my time has expired. Thank you. All right. Thank you, Mr. Gill. All right. Case is well ordered and is submitted. We will render a decision in due course. You may stand aside.